FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

AUG 1 2 2026

KEVIN P. WEIMER, Clerk
By: BMB Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF GEORGIA**

**ATLANTA DIVISION**

| | |
|---|---|
| KHALIL WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>TRANS UNION LLC,<br><br>Defendant. | 1:26-CV-4581<br><br>CIVIL ACTION FILE NO.<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**

Plaintiff Khalil Williams, proceeding pro se, brings this action against Defendant Trans Union LLC for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 through 1681x (the "FCRA"), and alleges as follows upon personal knowledge as to his own acts and experiences, and upon information and belief as to all other matters based on the investigation described herein.

## I. NATURE OF THE ACTION

1. This is an action for actual, statutory, and punitive damages arising from Defendant Trans Union LLC's willful and negligent failure to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's consumer file, its failure to conduct a reasonable reinvestigation of information Plaintiff disputed with specificity and supporting documentation, its failure to delete or modify information it could not verify, and its failure to provide Plaintiff a description of the procedure it used to purportedly verify the disputed information.

2. Trans Union publishes a consumer file about Plaintiff that contains four derogatory tradelines whose contents are internally contradictory and, in material respects, mathematically impossible. Among other defects, Trans Union reports a charged off Barclays Bank Delaware credit card with a balance and past due amount of $1,054 on an account with a $700 credit limit, as to which the furnisher itself has elsewhere reported that only $652 was written off; a charged off American Express credit card with a $1,317 balance alongside a reported credit limit of $0; a charged off Capital One credit card with a balance and past due amount of $2,945 on an account with a $2,500 credit limit; and payment histories for the same accounts that materially conflict with the payment histories the same furnishers simultaneously report to Experian, including different months of first delinquency and different charge off dates.

3. For each of the three charged off credit card tradelines, Trans Union's own consumer disclosure leaves the field captioned "Estimated month and year this item will be removed" entirely blank, indicating that Trans Union has not recorded or cannot identify the date of first delinquency that fixes the mandatory purge date under 15 U.S.C. § 1681c. Information whose obsolescence date the agency cannot identify is not information that can honestly be called "verified."

4. Plaintiff disputed each of these defects in writing, item by item, with enclosures, by certified mail. Trans Union responded that the accounts were "verified." Plaintiff then made a written request under 15 U.S.C. § 1681i(a)(6)(B)(iii) and (a)(7) for a description of the procedure used to determine accuracy. Trans Union responded outside the fifteen day statutory window, provided no description of any procedure, and simply repeated that the accounts were verified. This is the kind of automated reliance on furnisher self-confirmation that the Eleventh Circuit has held cannot be deemed reasonable as a matter of law where the consumer has given the agency specific notice of a dispute, Losch v. Nationstar Mortgage LLC, 995 F.3d 937 (11th Cir. 2021), and that the Third Circuit long ago held insufficient, Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997).

## II. JURISDICTION AND VENUE

5. This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p because this action arises under the FCRA, a federal statute.

6. This Court has personal jurisdiction over Defendant because Defendant regularly conducts business in the State of Georgia and in this District, including assembling, evaluating, and selling consumer reports concerning Georgia residents such as Plaintiff, and because a substantial part of the events giving rise to Plaintiff's claims, including the publication of inaccurate information about Plaintiff and the receipt of Plaintiff's disputes mailed from this District, occurred in and was directed at this District.

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, where Plaintiff resides, where Plaintiff received Trans Union's deficient reinvestigation results, and where the inaccurate consumer reports concerning Plaintiff were and are published to third parties.

8. Plaintiff resides in Fulton County, Georgia, which lies within the Atlanta Division of this District, making assignment to the Atlanta Division proper under Local Rule 3.1.

## III. PARTIES

9. Plaintiff Khalil Williams is a natural person residing in Fulton County, Georgia. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

10. Defendant Trans Union LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 555 West Adams Street, Chicago, Illinois 60661. Trans Union may be served through its registered agent for service of process in the State of Georgia.

11. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) because, for monetary fees, it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and it uses means or facilities of interstate commerce for the purpose of preparing or furnishing consumer reports. Trans Union is one of the three nationwide consumer reporting agencies described in 15 U.S.C. § 1681a(p).

12. The file Trans Union maintains concerning Plaintiff, identified by Trans Union as File Number 440510717, is a "file" as defined by 15 U.S.C. § 1681a(g), and the communications of information from that file to third parties are "consumer reports" as defined by 15 U.S.C. § 1681a(d).

## IV. STATUTORY FRAMEWORK

13. Congress enacted the FCRA to ensure fair and accurate credit reporting, finding that consumer reporting agencies "have assumed a vital role in assembling and evaluating consumer credit" and that there is "a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a).

14. Section 1681e(b) requires that whenever a consumer reporting agency prepares a consumer report, it "shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

15. Section 1681i(a)(1)(A) requires that if the completeness or accuracy of any item of information in a consumer's file is disputed by the consumer, the agency shall, free of charge, "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate," and record the current status of the disputed information or delete the item, generally within thirty days.

16. Section 1681i(a)(2)(A) requires the agency, within five business days, to provide notification of the dispute to the furnisher, and provides that the notice "shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller."

17. Section 1681i(a)(4) requires the agency, in conducting its reinvestigation, to “review and consider all relevant information submitted by the consumer.”

18. Section 1681i(a)(5)(A) requires the agency to promptly delete or modify any item of disputed information that is found to be inaccurate or incomplete, or that “cannot be verified.”

19. Section 1681i(a)(6)(B)(iii) requires the agency, as part of its notice of reinvestigation results, to notify the consumer that, if requested by the consumer, “a description of the procedure used to determine the accuracy and completeness of the information shall be provided to the consumer by the agency, including the business name and address of any furnisher of information contacted in connection with such information and the telephone number of such furnisher, if reasonably available.” Section 1681i(a)(7) requires the agency to provide “a description referred to in paragraph (6)(B)(iii)” to the consumer “not later than 15 days after receiving a request from the consumer for that description.”

20. Section 1681c(a)(4) prohibits a consumer reporting agency from reporting accounts placed for collection or charged to profit and loss which antedate the report by more than seven years, and Section 1681c(c)(1) fixes the running of that period at 180 days after the commencement of the delinquency

which immediately preceded the collection activity or charge to profit and loss. A consumer reporting agency must therefore maintain the date of first delinquency for every charged off account it reports in order to comply with the statute's mandatory purge requirement.

21. A reinvestigation under Section 1681i is not a formality. In Losch, the Eleventh Circuit held that a consumer reporting agency's transmission of an automated verification request to the furnisher is neither per se reasonable nor per se unreasonable, and that where the consumer has given the agency detailed notice of a specific dispute, the reasonableness of a reinvestigation that goes no further than furnisher confirmation cannot be resolved in the agency's favor as a matter of law. Losch, 995 F.3d 937. The Third Circuit reached the same conclusion decades earlier, holding that the "grave responsibilit[y]" imposed by § 1681i(a) "must consist of something more than merely parroting information received from other sources." Cushman, 115 F.3d at 225.

## V. FACTUAL ALLEGATIONS

### A. Trans Union Publishes Four Derogatory Tradelines Containing Specific, Objectively Verifiable Inaccuracies

22. On January 17, 2026, Plaintiff obtained his full consumer disclosure from Trans Union, File Number 440510717 (the "January 2026 Disclosure"). A true and correct copy of the relevant portions of the January 2026 Disclosure is attached as Exhibit A.

23. The January 2026 Disclosure lists four tradelines in the section captioned "Accounts with Adverse Information": an American Express credit card account, number beginning 349992712758; a Barclays Bank Delaware credit card account, number beginning 00032504889; a Capital One credit card account, number beginning 517805768074; and a Virginia Federal Credit Union installment account, number beginning 51990012 (collectively, the "Disputed Tradelines").

24. On the same day, January 17, 2026, Plaintiff obtained his consumer disclosure from Experian, Report Number 1597-1014-22 (the "Experian Disclosure"), which reports the same four accounts as furnished by the same furnishers. A true and correct copy of the relevant portions of the Experian Disclosure is attached as Exhibit F. Plaintiff obtained and compared the two disclosures precisely so that his dispute to Trans Union would identify concrete, document supported discrepancies rather than generalized disagreement.

25. Plaintiff does not, in this action or in his disputes, contest the mere existence of the underlying accounts. Plaintiff's disputes identified, and this

Complaint alleges, objective factual inaccuracies, internal contradictions, and omissions in the manner in which Trans Union reports the accounts. These are factual matters capable of being checked against account level records, not collateral legal attacks on the validity of any debt.

**The American Express Tradeline**

26. Trans Union reports the American Express account with a pay status of charged off and a monthly rating of "C/O" continuously from July 2022 through September 2025.

27. Trans Union's payment history grid for the account reports a balance of $1,317 and a past due amount of $1,317 only in scattered, isolated months, including April 2025 and September 2025, while reporting no balance data at all in the intervening months, an on again off again pattern that is inconsistent with an account in a static charged off condition and with the furnisher's obligation to report a monthly account status.

28. Trans Union's credit limit history for this revolving account reports a credit limit of $0 beginning April 2025, while simultaneously reporting a high balance of $1,317. A revolving credit card account cannot carry a $1,317 balance against a genuine $0 credit limit, and reporting a $0 limit grossly distorts any utilization calculation performed by users of Plaintiff's consumer report.

29. The field in Trans Union's disclosure captioned "Estimated month and year this item will be removed" is blank for the American Express tradeline. Both Trans Union's and Experian's payment grids for this account reflect that the delinquency immediately preceding charge off commenced with a thirty day delinquency first reported for February 2022, which under 15 U.S.C. § 1681c(c)(1) fixes a mandatory purge date no later than approximately August 2029, and Experian expressly reports that it will remove the account in August 2028. Trans Union reports no removal date at all.

30. The remarks Trans Union appends to the account cycle mechanically among "PRL" (profit and loss write off), "AID" (account information disputed by consumer), and "CBG" (canceled by credit grantor) in alternating months, a pattern reflecting automated data churn rather than the actual, stable condition of a single closed account.

**The Barclays Bank Delaware Tradeline**

31. Trans Union reports the Barclays account with a balance of $1,054 and a past due amount of $1,054, reported monthly from approximately April 2025 through January 2026, on a credit card account whose credit limit Trans Union itself reports as $700.

32. The same furnisher, Barclays Bank Delaware, simultaneously reports the same account to Experian with the status "Account charged off. $652 written off. $1,054 past due as of Jan 2026." The amount the furnisher states was charged off, $652, cannot be reconciled with the $1,054 balance and past due figures, and the $1,054 figure exceeds the $700 credit limit by $354 without any accounting. At minimum one of the reported figures is false, and no reasonable reinvestigation could verify all of them simultaneously.

33. Trans Union and Experian report materially different delinquency histories for the same Barclays account over the same months. For April 2022, Trans Union reports the account 120 days past due while Experian reports it 150 days past due. For May 2022, Trans Union reports 120 days while Experian reports 180 days. For June 2022, Trans Union reports 120 days while Experian reports no data. For July 2022, Trans Union reports the account as already charged off while Experian reports it 180 days past due, with Experian dating the charge off to August 2022. The same account cannot have charged off in two different months at two different delinquency depths. At least one of the two reported histories is inaccurate, and Plaintiff placed this exact comparison in front of Trans Union in his dispute.

34. The furnisher's own payment data, as reflected in the Experian Disclosure, shows the last payment on the Barclays account was $0 paid on December 18, 2021, and that no payment has been received since. Nevertheless the tradeline asserts amounts newly "past due as of" January 2026, more than three and a half years after charge off, creating the false and damaging appearance of recent and ongoing delinquency activity on a long dead account.

35. The field captioned "Estimated month and year this item will be removed" is blank for the Barclays tradeline in the January 2026 Disclosure, even though Trans Union's own payment grid shows the delinquency preceding charge off commencing with a thirty day delinquency in December 2021, and even though Experian reports it will remove the same account in August 2028.

**The Capital One Tradeline**

36. Trans Union reports the Capital One account with a balance of $2,945 and a past due amount of $2,945, reported monthly from approximately April 2025 through December 2025, on a credit card account whose credit limit Trans Union itself reports as $2,500. The reported balance exceeds the reported credit limit by $445 with no accounting, and the furnisher's parallel reporting to Experian states the identical $2,945 figure was written off in full.

37. For March 2025, Trans Union rates the Capital One account "X," meaning unknown, in the middle of an otherwise unbroken string of monthly charge off ratings, while Experian reports a charge off rating for the same account in the same month. An account cannot simultaneously have a known charged off status and an unknown status.

38. Trans Union and Experian also conflict on the onset of delinquency for the Capital One account. Trans Union reports the account thirty days past due in November 2021, while Experian reports the account current in November 2021 and first delinquent at sixty days in December 2021. For March 2022, Experian reports the account 150 days past due while Trans Union reports 120 days.

39. The field captioned "Estimated month and year this item will be removed" is blank for the Capital One tradeline in the January 2026 Disclosure, even though Experian reports it will remove the same account in July 2028.

**The Virginia Federal Credit Union Tradeline**

40. Trans Union reports the Virginia Federal Credit Union account in the adverse accounts section with a pay status of "Account paid in Full; was a Charge-off" and the remark "Paid in Full, was a charge-off." The account was a small unsecured obligation with an original balance of $324 that was paid in full, with the furnisher reporting charge off activity only in the closing months of 2021.

41. Trans Union reports no estimated removal date and no date of first delinquency for this account. Because the delinquency that preceded the 2021 charge off necessarily commenced in 2021 or earlier, the mandatory purge date for this tradeline under 15 U.S.C. § 1681c falls in 2028 at the latest, and Trans Union's file contains no data demonstrating that it has recorded the date from which that period runs.

**B. Plaintiff's January 23, 2026 Dispute Identified Each Inaccuracy With Specificity and Enclosed Supporting Documentation**

42. On January 23, 2026, Plaintiff mailed a written dispute to Trans Union by United States Postal Service certified mail, tracking number 92071902358909000037183404 (the "January Dispute"). A true and correct copy of the January Dispute is attached as Exhibit B.

43. The January Dispute was not a form letter and was not a generalized denial. It identified each of the four Disputed Tradelines by furnisher name and account number and enumerated, item by item, the specific inaccuracies alleged above, including the $652 versus $1,054 contradiction on the Barclays account, the balances exceeding the reported credit limits on the Barclays and Capital One accounts, the $0 credit limit reported against a $1,317 balance on the American Express account, the conflicting charge off months and delinquency depths

reported by the same furnishers to Experian, the "X" unknown rating embedded in the Capital One charge off history, the advancing "past due as of" assertions on accounts with no payment activity since 2021, and the blank estimated removal date fields on all of the charged off accounts.

44. The January Dispute enclosed documentation supporting each identified inaccuracy, including the relevant pages of the competing Experian Disclosure bearing the same furnishers' conflicting data, and requested that Trans Union delete or correct the disputed information.

45. Trans Union received the January Dispute in the ordinary course of the mails. The dispute was not frivolous or irrelevant within the meaning of 15 U.S.C. § 1681i(a)(3), and Trans Union never notified Plaintiff of any determination that it was.

**C. Trans Union Returned a Verification That No Reasonable Reinvestigation Could Produce**

46. In or about February 2026, within the statutory response period, Trans Union sent Plaintiff written reinvestigation results stating that each of the Disputed Tradelines had been "verified" as accurate and that the information would continue to be reported. A true and correct copy of Trans Union's reinvestigation response is attached as Exhibit C.

47. Trans Union's response did not correct the $1,054 balance on the $700 limit Barclays account, did not reconcile the $652 charge off figure, did not correct or explain the $0 credit limit on the American Express account, did not resolve the conflicting charge off months, did not supply the missing estimated removal dates or dates of first delinquency, and did not address a single one of the enumerated discrepancies. The tradelines were republished in materially identical form.

48. Upon information and belief, Trans Union's entire reinvestigation consisted of transmitting an automated consumer dispute verification form through the e-OSCAR system to each furnisher, accepting the furnisher's electronic confirmation of its own previously furnished data, and making no independent examination of any underlying record, no comparison of the internally contradictory figures Plaintiff had identified, and no review of the documentary evidence Plaintiff enclosed.

49. Upon information and belief, Trans Union did not transmit to the furnishers all relevant information regarding the dispute that Plaintiff had provided, including the enclosed comparative documentation, as required by 15 U.S.C. § 1681i(a)(2).

50. The nature of the defects Plaintiff identified is such that a furnisher's bare electronic confirmation could not logically verify them. A data point that

contradicts another data point in the same tradeline cannot be verified by affirming both. A blank obsolescence date cannot be verified into existence. Trans Union's "verified" result is therefore itself evidence that no reasonable reinvestigation occurred.

**D. Plaintiff's February 25, 2026 Request for the Method of Verification and Trans Union's Untimely Non-Response**

51. On February 25, 2026, Plaintiff mailed a written request to Trans Union by United States Postal Service certified mail, tracking number 92071902358909000037803012, expressly invoking 15 U.S.C. § 1681i(a)(6)(B)(iii) and (a)(7) and requesting a description of the procedure used to determine the accuracy and completeness of each Disputed Tradeline, including the business name, address, and telephone number of each furnisher contacted (the "MOV Request"). A true and correct copy of the MOV Request is attached as Exhibit D.

52. Trans Union received the MOV Request in the ordinary course of the mails. Section 1681i(a)(7) required Trans Union to provide the requested description within fifteen days of receipt.

53. Trans Union did not respond within fifteen days. Approximately thirty days after the MOV Request, Trans Union sent Plaintiff a boilerplate letter that

repeated the assertion that the accounts had been verified. A true and correct copy of Trans Union's response is attached as Exhibit E.

54. Trans Union's response did not describe any procedure used to determine accuracy or completeness. It did not state what records, if any, were reviewed, did not describe what the furnishers were asked or what they answered, and did not disclose the identity or contact information of the individuals or business units contacted. It communicated only the conclusion that the accounts were "verified," which is the result of a procedure, not a description of one.

**E. Trans Union Continues to Publish the Inaccurate Information to Third Parties**

55. Trans Union's own records reflect that it has furnished consumer reports or file information concerning Plaintiff containing the Disputed Tradelines to third parties, including to Barclays Bank Delaware in connection with an account review on December 25, 2025; to American Express in connection with an account review on January 21, 2025; to GEICO Insurance in connection with insurance underwriting on March 17, 2025; and to Liberty Mutual in connection with insurance underwriting on September 19, 2024.

56. Upon information and belief, Trans Union has continued after March 2026 to furnish consumer reports containing the unchanged Disputed Tradelines to

third parties, including to subscribers performing account reviews and periodic portfolio screening, and stands ready to furnish such reports to any credit grantor, insurer, landlord, or employer who requests one, such that the inaccurate information has been and continues to be published beyond Trans Union's own files. See TransUnion LLC v. Ramirez, 594 U.S. 413, 433 through 434 (2021).

**F. Willfulness**

57. Trans Union has known since at least the 1990s, through published judicial decisions interpreting Section 1681i including Cushman, through decades of litigation to which it has been a party, and through the supervisory and enforcement activity of the Federal Trade Commission and the Consumer Financial Protection Bureau, that a reinvestigation consisting of nothing more than repeating a furnisher's confirmation of its own data does not satisfy the FCRA, particularly where the consumer supplies specific documentation of inaccuracy.

58. Upon information and belief, Trans Union nevertheless maintains, as a matter of deliberate corporate policy and system design, a high volume, largely automated dispute process built around the e-OSCAR platform that is engineered to close disputes on the basis of furnisher self-confirmation, without human review of consumer submitted documentation in the ordinary case, because independent investigation is more expensive than automated verification.

59. Trans Union's conduct toward Plaintiff was willful within the meaning of 15 U.S.C. § 1681n or, in the alternative, negligent within the meaning of 15 U.S.C. § 1681o, in that Trans Union verified as accurate, twice, tradelines containing contradictions that are apparent on the face of its own disclosure document; ignored documentary evidence in its possession; failed to record or produce the statutory obsolescence data for the accounts; and defaulted on the fifteen day deadline and substantive content of Section 1681i(a)(7). This conduct was knowing or, at minimum, reckless, and ran an unjustifiably high risk of harm to Plaintiff that was either known to Trans Union or so obvious that it should have been known. See Safeco Ins. Co. of America v. Burr, 551 U.S. 47, 68 (2007).

**G. Damages to Plaintiff**

60. As a direct and proximate result of Trans Union's conduct, Plaintiff has suffered concrete injury, including damage to his credit reputation through the publication of false and derogatory account data to the third parties identified above; the deterrent effect of a materially inaccurate credit file, which has chilled Plaintiff from seeking credit on terms he would otherwise pursue; the artificial suppression of the accuracy of his consumer file through overstated balances, phantom recent delinquencies, and distorted utilization figures; out of pocket expenses including certified mailing and document costs incurred in two rounds of

statutory disputes that Trans Union processed in bad faith; the loss of the time and labor required to assemble, compare, and transmit the documentation Trans Union then ignored; and emotional distress, including frustration, anxiety, and humiliation, from being made to repeat a futile process while false information continued to circulate under his name.

61. Plaintiff's injuries are continuing. Every consumer report Trans Union furnishes containing the Disputed Tradelines in their current form republishes the inaccuracies and renews the harm.

## COUNT I

## Violation of 15 U.S.C. § 1681e(b)

## Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

62. Plaintiff realleges and incorporates by reference each preceding paragraph as if fully set forth herein.

63. Trans Union prepared and furnished consumer reports concerning Plaintiff, including the reports furnished to Barclays Bank Delaware, American Express, GEICO Insurance, and Liberty Mutual identified above, and additional reports furnished to third party subscribers upon information and belief.

64. Those consumer reports contained inaccurate information, including without limitation a $1,054 balance and past due amount on a $700 limit account as to which the furnisher reported only $652 charged off; a $2,945 balance and past due amount on a $2,500 limit account; a $0 credit limit reported against a $1,317 balance; charge off statuses and monthly ratings that conflict internally and conflict with the same furnishers' contemporaneous reporting of the same accounts; an "unknown" rating embedded within a purportedly known charge off history; newly advancing past due assertions on accounts with no payment activity since 2021; and tradelines lacking any recorded obsolescence date.

65. Trans Union failed to follow reasonable procedures to assure the maximum possible accuracy of the information in those reports. Reasonable procedures would have included, at minimum, logical consistency checks that flag a reported balance exceeding a reported credit limit, a past due amount exceeding a reported charge off amount, a rating of unknown inside a continuous charge off string, and the absence of a date of first delinquency on a charged off account; and, once Plaintiff's January Dispute placed Trans Union on specific notice, procedures to correct or suppress the flagged data rather than republish it unchanged.

66. Trans Union's failures were willful within the meaning of 15 U.S.C. § 1681n or, in the alternative, negligent within the meaning of 15 U.S.C. § 1681o.

67. As a direct and proximate result, Plaintiff suffered the damages alleged above, and is entitled to actual damages; statutory damages of not less than $100 and not more than $1,000 under 15 U.S.C. § 1681n(a)(1)(A); punitive damages under 15 U.S.C. § 1681n(a)(2); and costs and reasonable attorney's fees under 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2) should counsel appear.

## COUNT II

### Violation of 15 U.S.C. § 1681i(a)(1)(A), (a)(2), (a)(4), and (a)(5)

### Failure to Conduct a Reasonable Reinvestigation

68. Plaintiff realleges and incorporates by reference each preceding paragraph as if fully set forth herein.

69. Plaintiff directly disputed the completeness and accuracy of the Disputed Tradelines with Trans Union by the January Dispute, which identified each inaccuracy with specificity and enclosed supporting documentation.

70. Trans Union failed to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate, in violation of 15 U.S.C. § 1681i(a)(1)(A). Its reinvestigation consisted, upon information and belief, of automated furnisher confirmation through e-OSCAR, without independent review of any underlying account records and without engagement with the internal

contradictions Plaintiff identified, contradictions that furnisher self-confirmation is logically incapable of resolving.

71. Upon information and belief, Trans Union failed to provide the furnishers with all relevant information regarding the dispute that it had received from Plaintiff, including Plaintiff's enclosed documentation, in violation of 15 U.S.C. § 1681i(a)(2).

72. Trans Union failed to review and consider all relevant information submitted by Plaintiff, including the comparative furnisher data Plaintiff enclosed, in violation of 15 U.S.C. § 1681i(a)(4). The unchanged republication of every disputed figure, including figures that cannot all be true at once, evidences that no such review occurred.

73. Trans Union failed to promptly delete or modify information that was inaccurate, incomplete, or could not be verified, in violation of 15 U.S.C. § 1681i(a)(5)(A). Information bearing no recorded date of first delinquency and no obsolescence date, and figures that contradict one another within a single tradeline, could not be verified, and the statute required their deletion or modification.

74. Trans Union's failures were willful within the meaning of 15 U.S.C. § 1681n or, in the alternative, negligent within the meaning of 15 U.S.C. § 1681o, and directly and proximately caused the damages alleged above, entitling Plaintiff

to actual damages, statutory damages, punitive damages, costs, and reasonable attorney's fees should counsel appear.

## COUNT III

### Violation of 15 U.S.C. § 1681i(a)(6)(B)(iii) and (a)(7)

### Failure to Timely Provide a Description of the Reinvestigation Procedure

75. Plaintiff realleges and incorporates by reference each preceding paragraph as if fully set forth herein.

76. By the MOV Request mailed February 25, 2026, Plaintiff requested a description of the procedure used to determine the accuracy and completeness of the disputed information, including the business name, address, and telephone number of each furnisher contacted.

77. Trans Union failed to provide the requested description within fifteen days of receipt of the MOV Request, in violation of 15 U.S.C. § 1681i(a)(7).

78. The response Trans Union eventually provided, approximately thirty days after the request, contained no description of any procedure at all. It stated only the conclusion that the accounts were verified. A statement of result is not a description of procedure, and Trans Union's response deprived Plaintiff of the statutory information Congress afforded him for the purpose of evaluating and challenging the adequacy of the reinvestigation.

79. Trans Union's failures were willful within the meaning of 15 U.S.C. § 1681n or, in the alternative, negligent within the meaning of 15 U.S.C. § 1681o, and directly and proximately caused injury to Plaintiff, including the informational injury of being denied statutorily mandated disclosures that bore directly on his ability to vindicate the accuracy of his file, and the prolongation of the publication of the inaccurate information, entitling Plaintiff to actual damages, statutory damages, punitive damages, costs, and reasonable attorney's fees should counsel appear.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Khalil Williams respectfully requests that this Court enter judgment in his favor and against Defendant Trans Union LLC as follows:

(a) Awarding Plaintiff actual damages in an amount to be determined at trial, pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a)(1);

(b) Awarding Plaintiff statutory damages of not less than $100 and not more than $1,000 for Defendant's willful violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

(c) Awarding Plaintiff punitive damages in an amount the jury deems just and sufficient to punish and deter Defendant's willful conduct, pursuant to 15 U.S.C. § 1681n(a)(2);

(d) Awarding Plaintiff his costs of this action, together with reasonable attorney's fees under 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2) in the event counsel appears on his behalf;

(e) Awarding prejudgment and postjudgment interest as permitted by law; and

(f) Granting such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 19th day of July, 2026.

**Khalil Williams**
Plaintiff, Pro Se
2600 Holcomb Bridge Road, Apt. 5106
Alpharetta, Georgia 30022
Email: khalilwilliams612@gmail.com